```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
UNITED STATES OF AMERICA      *
vs.                           *
                              *      CASE NO. 4:24-CR-26 (CDL)
SCOTT L. BUNKER,              *
     Defendant.               *
```

O R D E R

Defendant Scott L. Bunker, Jr. was charged with two traffic violations at Fort Moore: operating a motor vehicle without registration, in violation of O.C.G.A. § 40-2-8, and operating a motor vehicle above the posted speed limit, in violation of O.C.G.A. § 40-6-181. *See* Violation Notice E2278130, ECF No. 1; Violation Notice E2278129, ECF No. 3. Following a bench trial, the United States Magistrate Judge found Defendant guilty of both violations. As a sentence, the Magistrate Judge imposed fines on Defendant totaling $125, plus costs and fees. Fine Slip, ECF No. 4. Defendant appealed his conviction pursuant to 18 U.S.C. § 3402 and Federal Rule of Criminal Procedure 58(g)(2)(B). For the reasons set forth below, the Court affirms Defendant's convictions.

STANDARD OF REVIEW

This is a petty offense case. *See United States v. Brown*, No. 4:25-CR-1 (CDL), 2025 WL 104322, at *2 & n.2 (M.D. Ga. Jan. 15, 2025) (explaining that Georgia traffic offenses imported via

the Assimilative Crimes Act and charged by violation notice are "petty offenses").[1]  On appeal from a Magistrate Judge's judgment of conviction on a petty offense, the "defendant is not entitled to a trial de novo by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  *Id.*  So, the Court will consider legal questions de novo and review factual findings for clear error.  *See, e.g.*, *United States v. Ogiekpolor*, 122 F.4th 1296, 1304 (11th Cir. 2024) ("We review the district court's legal conclusions *de novo* and its factual findings for clear error.").

## BACKGROUND

Factually, there are no material disputes.  On June 13, 2024, Defendant was driving his Ford F-250 truck on a public road within Fort Moore, a federal military installation.  A Fort Moore police officer observed Defendant operating the truck above the speed limit and initiated a traffic stop.  The truck had a temporary tag that had expired in February 2024, and the officer confirmed that the truck did not have a current registration.

---

[1] In states like Georgia where "traffic law violations are State criminal offenses, such laws are made applicable under the provisions of [the Assimilative Crimes Act] 18 U.S.C. § 13 to military installations having concurrent or exclusive Federal jurisdiction."  32 C.F.R. § 634.25(e). Thus, for traffic offenses on Fort Moore, an offender is charged with a violation of the Assimilative Crimes Act, 18 U.S.C. §§ 7 & 13, and the relevant Georgia traffic statutes.

Defendant was charged with two offenses, both applicable to drivers on Fort Moore under the Assimilative Crimes Act, 18 U.S.C. §§ 7 & 13. First, Defendant was charged with driving an unregistered vehicle, in violation of O.C.G.A. § 40-2-8. Georgia law requires that "every owner of a motor vehicle . . . shall, during the owner's registration period in each year, register such vehicle . . . and obtain a license plate or revalidation decal to operate it." O.C.G.A. § 40-2-20(a)(1)(A).[2] Georgia law provides that "[a]ny person owning or operating any vehicle described in [O.C.G.A. §] 40-2-20 on any public highway or street without complying with that Code section shall be guilty of a misdemeanor." O.C.G.A. § 40-2-8(a). Second, Defendant was charged with speeding, in violation of O.C.G.A. § 40-6-181. It is a "a misdemeanor for any person to do any act forbidden or fail to perform any act required" under Georgia's Uniform Rules of the Road. O.C.G.A. § 40-6-1(a). One of those Rules is that "no person shall drive a vehicle at a speed in excess" of specified maximum limits. O.C.G.A. § 40-6-181(b).

## DISCUSSION

Defendant does not appear to dispute that he drove the truck above the speed limit on a public road or that he operated his

---

[2] The annual registration requirement has exceptions for vehicles like mopeds and golf carts, but a Ford F-250 truck does not fall into an excepted category. O.C.G.A. § 40-2-20(b).

3

truck on a public road even though the truck lacked a current registration. He argues, though, that his conviction is invalid because any statutes imposing vehicle registration requirements or speed restrictions do not apply to him. During the bench trial, Defendant argued that he is a "sovereign national," is not a United States citizen, and that there is a distinction between an "automobile" for personal use and a "motor vehicle." He referenced his right to travel and cited caselaw to the Magistrate Judge. He repeated most of those arguments in his appellate brief, which was docketed as "Motion to Quash / Motion to Vacate / Motion for Reconsideration re Judgment." *See* Def.'s Br., ECF No. 9. The Court addresses each of Defendant's appellate arguments below.

First, Defendant argues that "statutes are not law." *Id.* at 2. Although Defendant contends that this proposition is "supported by an overwhelming body of case law," he did not cite any cases to support this statement. Statutes are written laws enacted by legislative bodies. STATUTE, Black's Law Dictionary (12th ed. 2024). The legislative powers of the United States granted by the U.S. Constitution are "vested in a Congress of the United States." U.S. Const. art. I, § 1; *accord* U.S. Const. art. I, § 8 (listing Congress's powers); U.S. Const. art. I, § 8, cl. 18 (stating that Congress shall have the power to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the

4

Government of the United States, or in any Department or Officer thereof"). In Georgia, the legislative power of the state is vested in the Georgia General Assembly. Ga. Const. art. III, § 1, ¶ I. The Georgia General Assembly has "the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state." Ga. Const. art. III, § 6, ¶ I. The statutes enacted by the legislative bodies of the United States and Georgia are law. Defendant's frivolous argument to the contrary fails.

In his second frivolous argument, Defendant argues that he is not a government employee and that "Article Section Clause 14" states that "the government makes rules for itself, not the people." Def.'s Br. 2. It is not clear what Defendant means by "Article Section Clause 14." To the extent that Defendant intended to cite Article I, Section 8, Clause 14 of the United States Constitution, that provision states that Congress has the power "To make Rules for the Government and Regulation of the land and naval Forces." That clause is one of many provisions in Article I which sets out the powers of Congress, and it does not establish that Congress may not make laws that apply to the people. In support of his argument that he is not a government employee for whom the government makes rules, Defendant cites *Cruden's Ex'rs v. Neale*, 2 N.C. (1 Hayw.) 338 (N.C. Super. Ct. L. & Eq. 1796) (per

5

curiam), a North Carolina superior court case about a Revolutionary War-era North Carolina law disqualifying persons from bringing civil actions in North Carolina courts if they "attached themselves to the enemy, or aided them in the prosecution of the war." *Id.* at 345. The question for the North Carolina court was whether the law disqualified the plaintiff from prosecuting a civil action, where it was not clear from the pleadings that either of the disqualifying characters applied. *Cruden* is not binding precedent, and it does not establish that a government may not make rules for the people. Accordingly, Defendant's second argument fails.

In his third frivolous argument, Defendant contends that statutes cannot contain impermissible presumptions, citing *Tot v. United States*, 319 U.S. 463 (1943). In *Tot*, the Supreme Court evaluated whether Congress had the power to create a presumption within a criminal statute that had the effect of presuming that an essential element of the crime occurred after the statute's effective date (Congress did not). *Id*. at 472. Defendant does not clearly argue that there is an impermissible presumption in the statutes at issue here, so this argument fails.

Consistent with his inclination toward frivolous arguments, Defendant contends that statutes only apply to corporations, citing *Colonial Pipeline Co. v. Traigle*, 421 U.S. 100 (1975). In *Traigle*, the Supreme Court evaluated whether a state legislature

6

violated the U.S. Constitution's Commerce Clause by imposing a franchise tax on a pipeline company (it did not). *Id.* at 109. Nothing in that case establishes that statutes only apply to corporations. Moreover, both Georgia statutes under which Defendant was prosecuted and convicted (which are assimilated into federal law under the federal Assimilative Crimes Act, 18 U.S.C. §§ 7 & 13) expressly apply to persons, including "natural persons." *See* O.C.G.A. § 40-2-8(a) (stating that any "person owning or operating" an unregistered vehicle on a public street "shall be guilty of a misdemeanor"); O.C.G.A. § 40-6-1(a) (stating that it is a "misdemeanor for any person to do any act forbidden" by the Uniform Rules of the Road); O.C.G.A. § 40-6-181 (establishing maximum speed limits and stating that "no person shall drive a vehicle at a speed in excess of" those limits); O.C.G.A. § 40-1-1(43) (defining "person" for purposes of the Georgia motor vehicle title as "every natural person, firm, partnership, association, corporation, or trust"). Therefore, this argument fails.

The theme continues. In his next frivolous argument, Defendant contends that a "statute will not be presumed to have extraterritorial effect outside the jurisdiction of the legislature." Def.'s Br. 2. He cites "Bond v. Cranch 350, Ed 367," which the Court presumes refers to *Bond v. Jay*, 11 U.S. (7 Cranch) 350 (1813). In that case, the Supreme Court examined whether an exception to a 1715 Maryland statute of limitations

7

applied to an action by a non-Maryland merchant against a Maryland merchant (it did). The Supreme Court observed it would be a strain to construe the statute to apply only where *both* merchants lived outside of Maryland (as the Maryland merchant argued) because legislatures generally do not frame rules that only apply to contracts and persons outside their jurisdiction. *Id.* at 353. But here, there is no "extraterritorial effect" problem because the Assimilative Crimes Act expressly adopts State law for areas like U.S. Army posts within federal jurisdiction. *See* 18 U.S.C. §§ 7 & 13.

Wasting more of the Court's time, Defendant contends that statutes are "void for ambiguity" because they do not specify that they apply to "natural persons" and therefore "lack due process of law." Def.'s Br. 2. In support of this argument, Defendant cites *Rodrigues v. Donovan*, a Ninth Circuit case where the plaintiff brought a due process claim after his workers' compensation benefits were terminated without a hearing and there was "considerable delay" in deciding the plaintiff's claim. 769 F.2d 1344, 1348 (9th Cir. 1985). Contrary to Defendant's assertion, *Rodrigues* does not state that codes, rules, and regulations lack due process. And, as discussed above, both Georgia statutes under which Defendant was prosecuted expressly apply to persons, including "natural persons."

Stating the obvious, Defendant next notes that statutes that violate the U.S. Constitution are void. But then he reengages in frivolous argument, by failing to identify any specific statute that violates the U.S. Constitution. He does cite the treatise American Jurisprudence, but it is not clear how the cited section applies. *See* 16A Am. Jur. 2d *Constitutional Law* § 177, Westlaw (database updated Jan. 2025) (focusing on whether retroactive legislation should be given the same deference as prospective legislation). Defendant does not assert that any law was applied to him retroactively for conduct that occurred before the law's enactment.

Defendant continues the nonsense by asserting that "State officers can be held personally liable for actions taken in their official capacities." Def.'s Br. 3. He cites *Hafer v. Melo*, where the Supreme Court concluded that state officials sued in their individual capacities are "persons" within the meaning of 42 U.S.C. § 1983, which permits a person to bring an action against a state actor who, acting under color of state law, violated the person's federal rights. 502 U.S. 21, 23 (1991). Defendant does not explain how § 1983 is relevant to the issues the Court must decide regarding his appeal.

Grasping at straws, Defendant next argues that the "common law Grand Jury's authority . . . cannot be countered by the state." Def.'s Br. 3. Defendant relies on *United States v. Williams*, where

9

the Supreme Court concluded that a district court may not dismiss an "otherwise valid indictment because the Government failed to disclose to the grand jury 'substantial exculpatory evidence' in its possession." 504 U.S. 36, 37-38 (1992). Defendant did not elucidate the argument he is trying to make here. The Court understands that certain crimes—like federal felonies—must be presented to a grand jury, but Defendant was convicted of petty traffic offenses, not felonies. The trial of a petty offense may "proceed on a citation or violation notice." Fed. R. Crim. P. 58(b)(1). And, Defendant did not argue or establish that the Government had any exculpatory evidence that it failed to disclose.

Of course no piece of sovereign citizen litigation would be complete without an invocation of the "Right to Travel." Defendant argues that he has the "inborn right to travel the nation's roads without the requirement for a driver's license or registered vehicle." Def.'s Br. 3. The cases he cites, though, do not establish that individuals are entitled to drive on public roads without a license or registration. *See Kent v. Dulles*, 357 U.S. 116, 129 (1958) (concluding that the U.S. Secretary of State did not have authority to restrict individuals' freedom of travel by denying their passport applications because of their political beliefs); *Shachtman v. Dulles*, 225 F.2d 938, 942 (D.C. Cir. 1955) (finding that the plaintiff could proceed on his claim that the U.S. Secretary of State arbitrarily denied him a passport only

because he was part of an organization the U.S. Attorney General categorized as subversive, without any opportunity for the plaintiff to challenge that categorization). Moreover, some of Defendant's cited cases explain the well-established rule that a state may regulate a person's use of public roads—including by requiring a driver's license and registration. *Chicago Motor Coach Co. v. City of* Chicago, 169 N.E. 22, 25 (Ill. 1929), *repudiated on other grounds by City of Geneseo v. Illinois N. Utilities Co.*, 39 N.E.2d 26, 33 (Ill. 1941) (finding that a city may "regulate the use of streets by automotive vehicles" but may not "prohibit the use of the streets by them" and noting that municipalities may regulate a person's right to travel "in accordance with the public interest and convenience"); *Thompson v. Smith*, 154 S.E. 579, 583 (Va. 1930) (recognizing that a city may, under its police power, regulate a person's right to drive on public streets by requiring a person to have a driving permit, but concluding that a city may not delegate to an administrative officer the power to revoke a driving permit without legislatively establishing the legal principles that control the officer's discretion).

Ignoring reality (and more importantly the law), Defendant finally maintains "that there is no law or statute requiring a private motor-powered conveyance to be registered." Def.'s Br. 4. According to Defendant, until a "motor-powered conveyance" is registered, it is not "subject to commercial traffic codes, rules,

11

and regulations." *Id.* But Georgia law requires that "every owner of a motor vehicle" must register the vehicle. O.C.G.A. § 40-2-20(a)(1)(A); *see also* O.C.G.A. § 40-1-1(39) (defining "owner" as a "person, other than a lienholder or security interest holder, having the property in or title to a vehicle," including "a person entitled to the use and possession of a vehicle subject to a security interest in or lien by another person"). And, it is a misdemeanor for a person, including a "natural person," to operate an unregistered motor vehicle on a public roadway. O.C.G.A. § 40-2-8(a). Georgia law defines "motor vehicle" as "every vehicle which is self-propelled other than a personal [cargo] delivery device, an electric assisted bicycle, or an electric personal assistive mobility device." O.C.G.A. § 40-1-1(33). In turn, "vehicle" means "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." O.C.G.A. § 40-1-1(75). A Ford F-250 truck falls within Georgia's statutory definition of "motor vehicle." Defendant was the "operator" of the truck when the Fort Moore police officer pulled him over. *See* O.C.G.A. § 40-1-1(38) (defining "operator" as "any person who drives or is in actual physical control of a motor vehicle or who causes a fully autonomous vehicle to move or travel with the automated driving system engaged"); O.C.G.A. § 40-1-1(43) (defining the term "person" to include "natural person").

12

For these reasons, Defendant did not establish that the vehicle registration requirements do not apply to him.

## CONCLUSIONS

Defendant's frivolous arguments do not come close to demonstrating that the Magistrate Judge's factual findings were clearly erroneous or that she committed an error of law. Defendant's convictions are supported by both the evidence and the law. Accordingly, the Court affirms Defendant's convictions.

IT IS SO ORDERED, this 6th day of February, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
